**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KALEEL HINTON,** | : | |
| **Plaintiff** | : | **No. 1:23-cv-01686** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **B. SALAMON, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the Court is Defendants' motion to dismiss pro se Plaintiff's complaint in which he seeks compensatory and punitive damages from numerous state corrections officials based on claims that they retaliated against him in violation of the First Amendment and denied him equal protection of the laws under the Fourteenth Amendment. For the reasons set forth below, the Court will grant Defendants' motion to dismiss. The Court will also dismiss certain claims in the complaint pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(b). The Court will grant Plaintiff leave to file an amended complaint.

**I.    BACKGROUND**

Pro se Plaintiff Kaleel Hinton ("Hinton"), a convicted and sentenced state prisoner, commenced this action by filing a complaint, an application for leave to proceed in forma pauperis ("IFP Application"), and a certified prisoner trust fund account statement, all of which the Clerk of Court docketed on October 11, 2023. (Doc. Nos. 1–3.) In his complaint, Hinton names as Defendants: (1) B. Salamon ("Salamon"), the Superintendent of Pennsylvania State Correctional Institution Rockview ("SCI Rockview"); (2) T. Miller ("Miller"), a Corrections Classification Program Manager at SCI Rockview; (3) M. Rowe ("Rowe"), the Deputy Superintendent for Centralized Services at SCI Rockview; (4) S. Woodring ("Woodring"), the Deputy Superintendent for Facility Management at SCI Rockview; (5) J. VanGorder

("VanGorder"), a Major at SCI Rockview; (6) Mr. Gourley ("Gourley"), the Superintendent of

Pennsylvania State Correctional Institution Camp Hill ("SCI Camp Hill"); (7) Mr. Dickie

("Dickie"), a Lieutenant at SCI Camp Hill; (8) Randy Evans ("Evans"), the Deputy

Superintendent for Facility Management at SCI Camp Hill; (9) William Nicklow ("Nicklow"),

the Deputy Superintendent for Centralized Services at SCI Camp Hill; (10) Lindsy Kendall

("Kendall"), the "DSDC" for SCI Camp Hill; (11) Jason Albert ("Albert"), a Major at SCI Camp

Hill; (12) Douglas Benner ("Benner"), a Major at SCI Camp Hill; and (13) Bradley Ritchey

("Ritchey"), a Corrections Classification Program Manager at SCI Camp Hill.[1]  See (Doc. No. 1

at 1–6).  Hinton's claims against Defendants are based on alleged events that occurred from

September 2022 to June 10, 2023.  (Id. at 7.)

     In his complaint, Hinton alleges that on November 5, 2015, Benner witnessed him strike

SCI Camp Hill Correctional Officer Sensen ("Sensen") with a liquid substance.  (Id. at 7, 9.)

This unlawful conduct resulted in Hinton being charged and convicted of aggravated harassment

by a prisoner, and Hinton's prison term was "regenerated by 13 [to] 26 months" on April 25,

2017.  See (id. at 7).  This sentence is reflected in a "sentence status summary form," which was

accessible to all Defendants.  See (id.); see also (Doc. No. 1-1).  In addition, this conviction

resulted in Hinton's administrative separation from SCI Camp Hill.  (Doc. No. 1 at 8.)

     Hinton also avers that he filed a civil action in this District on April 17, 2022, titled

Hinton v. Houser, et al. ("Houser"),[2] in which he sued Miller and other SCI Rockview officials

---

[1]  Hereinafter, the Court will refer to Defendants alleged to work at SCI Rockview as the "Rockview Defendants" and Defendants alleged to work at SCI Camp Hill as the "Camp Hill Defendants," where appropriate.

[2]  This action is also assigned to the undersigned and docketed at No. 1:22-cv-00554.  Although Hinton alleges that he filed Houser on April 17, 2022, his complaint was not docketed until April 15, 2022.  See Hinton v. Houser, et al., No. 1:22-cv-00554 (M.D. Pa. filed Apr. 15, 2022), ECF

"for illegally subjecting him to a ghost special housing program unit in solitary confinement indefinitely in nature." See (Doc. No. 1 at 7–8). On June 29, 2022, Salamon, Miller, Rowe, Woodring, and VanGorder retaliated against Hinton for filing Houser by recommending that he be administratively separated from SCI Rockview and transferred to SCI Camp Hill. (Id. at 8, 13.) They did so knowing that Hinton was previously administratively separated from SCI Camp Hill. (Id. at 8, 13.)[3] Hinton asserts that this transfer endangered his life. (Id. at 8.)

In September 2022, Hinton was transferred from SCI Rockview to SCI Camp Hill. (Id.) Dickie interviewed Hinton upon his arrival at SCI Camp Hill. (Id.) Hinton alleges that SCI Camp Hill's Program Review Committee, which includes Gourley, Evans, Nicklow, Kendall, Albert, Benner, and Ritchey, cleared him to enter general population despite the existence of the administrative separation between him and Sensen, who was still employed at SCI Camp Hill. (Id. at 8, 13.) Hinton alleges that this action endangered his life and violated the Commonwealth of Pennsylvania Department of Corrections ("DOC")'s internal policy (DC-ADM 802). (Id. at 8, 13.) Hinton apparently spent nine (9) months in general population. (Id. at 8–9.) While in general population, Hinton was "deprived of access to services, program opportunities[,] and other activities accorded to other general population prisoners." See (id. at 9).

---

No. 1. For purposes of this Memorandum, the Court refers to April 15, 2022, as the complaint's filing date.

[3] In support of this allegation, Hinton attaches a copy of a DC-141, Part 4 form to his complaint. (Doc. No. 1-2 at 2.) This form indicates that Hinton was placed in "Disciplinary Custody" and confined in "Security Level 5 Housing" starting on April 10, 2022 based on a "misconduct dated 4/10/22 for Abusive Language, Refusing to Obey an Order, and Loaning or Borrowing Property." See (id.). On June 29, 2022, SCI Rockview's Program Review Committee members, Rowe, Woodring, and Miller, recommended that Hinton remain in disciplinary custody pending his transfer from SCI Rockview. (Id.) It appears that Salamon agreed with the recommendation on July 8, 2022. (Id.) Interestingly, nowhere in this form does it state that the recommendation included a transfer to SCI Camp Hill. (Id.)

Hinton was deposed in <u>Houser</u> on June 9, 2023.[4]  (<u>Id.</u> at 9.)  The following day, he was placed in administrative custody status in SCI Camp Hill's Restricted Housing Unit ("RHU") due to the administrative separation with Sensen.  (<u>Id.</u>)  Hinton spent sixty-five (65) days in the RHU before being transferred to Pennsylvania State Correctional Institution Frackville.  (<u>Id.</u>)

Based on these factual allegations, Hinton asserts a claim under 42 U.S.C. § 1983 against Defendants for retaliation in violation of the First Amendment to the United States Constitution.  (<u>Id.</u> at 11, 13–14.)  He also appears to assert that Defendants' actions violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment.[5]  (<u>Id.</u> at 11, 15–18.)  For relief, Hinton seeks compensatory and punitive damages.  (<u>Id.</u> at 11.)

On January 30, 2024, the Court issued an Order which, <u>inter alia</u>, granted the IFP Application and directed the Clerk of Court to send waiver of service forms to Defendants.  (Doc. No. 6.)  Defendants waived service (Doc. No. 9), and then filed a motion to dismiss the complaint as well as a supporting brief on April 1, 2024.  (Doc. Nos. 11, 12.)  Hinton filed a brief in opposition to the motion on May 14, 2024.  (Doc. No. 16.)  Defendants filed a reply brief in further support of their motion to dismiss on May 28, 2024.  (Doc. No. 17.)  Defendants' motion to dismiss is ripe for disposition.

---

[4]  Hinton specifically alleges that he "attended a disposition hearing" on June 9, 2023.  <u>See</u> (<u>id.</u> at 9).  The Court takes judicial notice that Hinton was deposed in <u>Houser</u> on June 9, 2023.  <u>See</u> <u>Hinton v. Houser, et al.</u>, No. 1:22-cv-00554 (M.D. Pa. <u>filed</u> Apr. 15, 2022), ECF No. 45-2.  As such, the Court construes Hinton's allegation as referring to his deposition in <u>Houser</u>.

[5]  As explained more <u>infra</u>, Hinton identifies his equal protection challenge as a "class of one" claim.  <u>See</u> (<u>id.</u> at 15).

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Under Rule 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d

224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618

F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  See id.  The plausibility standard requires more than a mere possibility that

the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal,

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the Third Circuit Court of Appeals has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). When following these steps, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

        In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106). This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))). Moreover, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it." See Mala, 704 F.3d at 244.

However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

### B.    Review Under 28 U.S.C. § 1915(e)(2)(B)

Because the Court has granted Hinton leave to proceed in forma pauperis (Doc. No. 6), the Court "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." See 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). In reviewing legal claims under Section 1915(e)(2)(B)(ii), the Court applies the aforementioned standard governing Rule 12(b)(6) motions to dismiss. See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under . . . § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017).

### C.    Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). "To state a claim

7

under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

## III.    DISCUSSION

Defendants move for dismissal of Hinton's complaint on several grounds.  First, they argue that Hinton fails to allege sufficient facts in his complaint to satisfy the causation element of a prima facie claim for First Amendment retaliation.  (Doc. No. 12 at 3, 5–8.)  More specifically, Defendants point out that (1) the period between Hinton filing his complaint in Houser and the Rockview Defendants' recommendation to transfer him or his actual transfer is not unduly suggestive, (2) Hinton does not allege any facts showing a pattern of antagonism between himself and any Defendant, and (3) Hinton does not allege that the Camp Hill Defendants knew about his complaint in Houser before allegedly retaliating against him.  (Id. at 3, 6.)  Second, Defendants contend Hinton's allegations are insufficient to show that the Camp Hill Defendants were personally involved in retaliating against him because there are no allegations that these Defendants were involved in his transfer to SCI Camp Hill.  (Id. at 4, 6–7.)  Third, Defendants seek dismissal of Hinton's Fourteenth Amendment equal protection "class of one" claim to the extent it duplicates his First Amendment retaliation claim.  (Id. at 4, 8.)  Fourth, Defendants argue that Hinton has failed to plead a plausible equal protection class-of-one claim because he does not identify any comparators in his complaint and his allegations about a purported violation of DOC policy is "both nonexistent and irrelevant."  See (id. at 4, 8–10.)  Fifth, and finally, Defendants seek dismissal of Hinton's request for compensatory damages because he does not allege in his complaint that he suffered any physical injury.  See (id. at 4, 11).  The Court addresses each argument in turn.

8

A.    **First Amendment Retaliation**

1.    **Elements of a Prima Facie Retaliation Claim**

To plead a prima facie First Amendment retaliation claim, a plaintiff must allege that: "(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to [retaliate against them]."  See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted).  As for the first element of a plaintiff's prima facie retaliation claim, the filing of a lawsuit constitutes activity protected by the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

Regarding the second element of a plaintiff's prima facie case, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising [their] [constitutional] rights[.]"  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (second alteration in original) (citations and internal quotation marks omitted); Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015) (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights . . ." (citation omitted)).  However, to be actionable under Section 1983, the alleged adverse action must be more than de minimis.  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than de minimis" (citations and internal quotation marks omitted)).

Finally, with respect to the third element of a plaintiff's prima facie case, i.e., the causation element, the Court observes that, "[b]ecause motivation is almost never subject to

proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive." See Watson, 834 F.3d at 422. The plaintiff "can satisfy [their] burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id. (footnote omitted). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)); see also Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (pointing out that circumstantial evidence may include "inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole"), as amended (Aug. 28, 2007).

### 2.    The Rockview Defendants

Defendants insist that Hinton fails to allege a plausible First Amendment claim against the Rockview Defendants because his allegations do not show a causal connection between any protected activity and a retaliatory action. (Doc. No. 12 at 5.) They point out that Hinton fails to plausibly allege an unusually suggestive temporal proximity between his protected activity, the filing of the Houser complaint on April 15, 2022, and the retaliatory act, the Rockview Defendants' June 29, 2022 recommendation that he be transferred to SCI Camp Hill. (Id. at 6.) Given this lack of an unusually suggestive temporal proximity, Defendants contend that Hinton fails to allege a pattern of antagonism between the Rockview Defendants and him during the period of April 15, 2022, until June 29, 2022, to support an inference of a retaliatory motive. (Id. at 5.) Furthermore, Defendants assert that Hinton fails to allege any facts showing that that the

Rockview Defendants, other than Miller, knew about his <u>Houser</u> complaint because Hinton had asserted claims against only Miller and two (2) other individuals who are not named as Defendants in this case.  (<u>Id.</u> at 6.)

In response to Defendants' arguments, Hinton appears to generally argue that his filing the <u>Houser</u> complaint was "the nexus of a substantial and motivating factor for [the] retaliatory transfer" recommendation on June 29, 2022.  <u>See</u> (Doc. No. 16 at 5–6).  Hinton states that evidence showing the "suspicious timing of [the] adverse action" after he engaged in protected activity is sufficient to support an inference of causation in this case.  <u>See</u> (<u>id.</u> at 4).  He also cites to a Second Circuit Court of Appeals case, <u>Espinal v. Goord</u>, 558 F.3d 119 (2d Cir. 2009), in support of his general contention that his allegations are sufficient to raise an inference of causation due to the close temporal proximity between his protected activity and the retaliatory action.  Additionally, Hinton asserts that the Rockview Defendants were aware of the <u>Houser</u> action.  (<u>Id.</u> at 4.)

In their reply brief, Defendants contend that Hinton acknowledges in his opposition brief that his allegations do not show any pattern of antagonism between the Rockview Defendants and him during the period between his filing of the <u>Houser</u> complaint and the June 29, 2022 recommendation to transfer him to SCI Camp Hill.  (Doc. No. 17 at 1–2.)  They also argue that Hinton's citation to the Second Circuit's decision in <u>Espinal</u> is misplaced between (1) it is not binding on this Court, and (2) it conflicts with Third Circuit precedent.  (<u>Id.</u> at 2–3.)

As explained below, even if the Court presumes that Hinton's allegations are sufficient at this stage to satisfy the causation element regarding the temporal proximity between his protected conduct and the alleged retaliatory action, he fails to allege any facts showing that Miller and the other Rockview Defendants were aware of the <u>Houser</u> complaint.  Therefore, the

Court will grant Defendants' motion to dismiss Hinton's First Amendment retaliation claim against the Rockview Defendants.

"For protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." See Ambrose v. Twp. of Robinson, Pa., 303 F.3d 488, 493 (3d Cir. 2002) (citing Allen v. Iranon, 283 F.3d 1070, 1076 (9th Cir. 2002)). In addition, "temporal proximity of adverse action to protected conduct does not establish that the adverse actor had knowledge of the protected conduct before acting." See Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 197 (3d Cir. 2015). "In other words, a plaintiff relying on the temporal proximity between [their] protected conduct and a defendant's adverse action cannot rely solely on temporal proximity when there is no allegation the defendant was aware of the protected conduct." Stansbury v. Harry, No. 24-cv-00686, 2025 WL 43550, at *3 (M.D. Pa. Jan. 7, 2025), appeal dismissed, No. 25-1109 (3d Cir. Feb. 13, 2025).

Here, as Defendants point out in their reply brief, Hinton is relying on the temporal proximity between his filing of the complaint in Houser and his transfer recommendation to satisfy the causation element of his retaliation claim. See (Doc. No. 17 at 1–2); see also (Doc. No. 16 at 2–4). Although Hinton asserts in his opposition brief that the Rockview Defendants were aware of Houser, see (Doc. No. 16 at 4), there are no such factual allegations in his complaint.[6] Considering that Hinton's filing of the Houser complaint was a single act, the mere

---

[6] Hinton does not even allege that the Rockview Defendants were "aware" of his Houser complaint when they recommended his transfer from SCI Rockview. See (Doc. No. 1 at 7–14). Even if he did, without sufficient additional factual allegations, his bald allegation of these Defendants' awareness would be a legal conclusion not entitled to consideration in addressing whether he states a plausible claim for relief. See Hagwood v. City of Phila., 604 F. Supp. 3d 293, 304 (E.D. Pa. 2022) ("Though Plaintiff pleads, as a legal conclusion that Defendant was generally aware of these circumstances, Plaintiff does not provide sufficient factual support that would allow the Court to infer actual awareness."); Keener v. Hribal, 351 F. Supp. 3d 956, 971 n.8 (W.D. Pa. 2018) ("Plaintiff's bare allegations that the school district was aware of Hribal's

filing of which would not have placed even Miller on notice that a complaint was filed against him, Hinton's failure to allege facts showing that the Rockview Defendants knew about this complaint warrants dismissal of his First Amendment retaliation claim against the Rockview Defendants. See Stansbury, 2025 WL 43550, at *3 ("[B]ecause Stansbury's complaint fails to allege that defendants knew about [the protected activity] or how they had such knowledge, his retaliation claim fails to allege causation and must be dismissed."); cf. Crosbie v. Highmark, Inc., No. 19-cv-01235, 2019 WL 6530990, at *9 (E.D. Pa. Dec. 4, 2019) ("At th[e motion to dismiss] stage, the Court can reasonably infer from Plaintiff's allegations that whoever terminated Plaintiff was generally aware of his course of protected conduct, which allegedly lasted over a year, included reports to many members of management inside and outside his direct chain of command, and involved other members of his team and a government investigation."). Accordingly, the Court will grant Defendants' motion to dismiss Hinton's First Amendment retaliation claim against the Rockview Defendants.

### 3.    The Camp Hill Defendants

Defendants move to dismiss Hinton's First Amendment retaliation claims against the Camp Hill Defendants because they believe that there are no allegations in the complaint that the Camp Hill Defendants (1) knew about Houser before or when Hinton was transferred to SCI Camp Hill or (2) were personally involved in Hinton's transfer to SCI Camp Hill. (Doc. No. 12 at 6–8.) In response, Hinton contends that he sufficiently alleged that the Camp Hill Defendants

---

violent propensities and mental illness amounts to a legal conclusion."); see also Doe v. Robertson, 751 F.3d 383, 389 n.4 (5th Cir. 2014) ("If Plaintiffs had merely recited the legal test in Farmer by alleging that Robertson and Rosado were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference,' then their allegation would be no more than 'a legal conclusion couched as a factual allegation.'" (quoting Iqbal, 556 U.S. at 678)).

knew about <u>Houser</u> prior to "accepting" him for transfer into SCI Camp Hill and were personally involved in his transfer insofar as they accepted him into SCI Camp Hill.  <u>See</u> (Doc. No. 16 at 5–7).  Hinton also asserts that he has sufficiently alleged that the Camp Hill Defendants retaliated against him by (1) placing him in SCI Camp Hill's general population despite knowing of the administrative separation between him and Sensen and (2) placing him in administrative custody in the Restricted Housing Unit a day after he was deposed in <u>Houser</u>.  (<u>Id.</u>).  Defendants reply to Hinton's latter assertion by maintaining that Hinton did not include this claim in his complaint. (Doc. No. 17 at 3 n.3.)

As explained below, the Court will grant Defendants' motion to dismiss Hinton's First Amendment retaliation claims against the Camp Hill Defendants insofar as Hinton alleges that they retaliated against him by accepting him at SCI Camp Hill and placing him in general population upon his arrival there.  The Court also finds that Hinton alleges in his complaint that the Camp Hill Defendants retaliated against him by placing him in the RHU a day after he was deposed in <u>Houser</u>.  Nevertheless, the Court will also dismiss this retaliation claim under Section 1915(e)(2)(B)(ii) for the failure to state a claim upon which relief may be granted.

### a.    The Acceptance of Hinton into SCI Camp Hill

Hinton's First Amendment retaliation claim is based on the Camp Hill Defendants "accepting [him] to transfer into their facility."[7]  <u>See</u> (Doc. No. 1 at 13).  Hinton does not allege any facts supporting his "acceptance" as an act of retaliation by the Camp Hill Defendants.

---

[7] Even though it is not among the Court's listed issues, it is unclear whether the Camp Hill Defendants' (or any official at SCI Camp Hill for that matter) have the authority to decline an inmate designated for transfer into their facility.  Similarly, even though the Rockview Defendants recommended Hinton's transfer to a different DOC correctional facility, this was merely a recommendation, and it is unclear whether anyone there had the authority to designate the location of Hinton's transfer.

Hinton cites to no Third Circuit or United States Supreme Court opinion establishing that "accepting" an inmate into a correctional facility that employs a correctional officer from whom the inmate was to be separated constitutes an adverse action that would support a claim of retaliation. While there are precedential Third Circuit decisions clearly establishing when an inmate's transfer can qualify as adverse action, see, e.g., Rauser v Horn, 241 F.3d 330, 333 (3d Cir. 2001) (indicating that inmate's transfer to correctional facility where family could not visit could qualify as adverse action), there are no such cases addressing whether "accepting" the inmate into the transferee facility can qualify as adverse action. The Court notes this issue because of the potential applicability of qualified immunity to Hinton's First Amendment retaliation claim pertaining to the Camp Hill Defendants' "accept[ance]" of him into SCI Camp Hill.[8]

Defendants argue that because the Camp Hill Defendants are not named as defendants in Houser, and Hinton's allegations relate to incidents that allegedly occurred at SCI Rockview and not at SCI Camp Hill, see (Doc. No. 1 at 8 (indicating that the complaint in Houser was "against . . . Miller . . . and several other SCI Rockview Officials for illegally subjecting [Hinton] to a

---

[8]  Although qualified immunity is an affirmative defense, this Court may address it sua sponte "where it is clear on the face of the complaint that a party is immune from suit." See Newland v. Reehorst, 328 F. App'x 788, 791 (3d Cir. 2009) (unpublished) (citing 28 U.S.C. § 1915(e)(2)(B)(iii)); 28 U.S.C. § 1915(e)(2)(B)(iii) (providing that, in cases where plaintiffs proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that . . . the action . . . seeks monetary relief against a defendant who is immune from such relief"); see also Doe v. Delie, 257 F.3d 309, 312, 322 n.13 (3d Cir. 2001) (affirming district court's sua sponte dismissal under Section 1915(e)(2)(B) due to qualified immunity); Torrey v. N.J. Dep't of Law and Pub. Safety, Div. of Crim. Justice, 717 F. App'x 169, 171 (3d Cir. 2017) (unpublished) (concluding that "none of the [district court's] rulings," including "rul[ing] sua sponte that the State and state-employee defendants were entitled to qualified immunity," "were erroneous"). Because the Court, as explained infra, will be permitting Hinton to file an amended complaint, the Court will not dismiss this retaliation claim on the basis of qualified immunity at this time.

ghost special housing program unit in solitary confinement indefinitely in nature"), the Court should dismiss the Camp Hill Defendants.  "[A]ccepting the allegations in [the] complaint as true and constru[ing] them in the light most favorable to [the plaintiff]," see Bey v. Holt, No. 23-cv-00328, 2024 WL 1356683, at *6 (M.D. Pa. Mar. 29, 2024), the Court declines to dismiss Hinton's First Amendment retaliation claim against the Camp Hill Defendants solely because they are not named defendants in Houser.

However, Hinton fails to allege any facts showing that the Camp Hill Defendants knew about Houser when they "accepted" him into SCI Camp Hill, or that they were authorized to decline to accept him at SCI Camp Hill.  This failure supports dismissal of Hinton's retaliation claim against the Camp Hill Defendants insofar as Hinton claims that their retaliatory act was "accept[ing]" him into SCI Camp Hill.  See Stansbury, 2025 WL 43550, at *3 ("[B]ecause Stansbury's complaint fails to allege that defendants knew about [the protected activity] or how they had such knowledge, his retaliation claim fails to allege causation and must be dismissed.").  Therefore, the Court will grant Defendants' motion to dismiss Hinton's First Amendment retaliation claim against the Camp Hill Defendants based on his transfer to SCI Camp Hill.

**b.    Placement in General Population After Arrival**

Hinton's First Amendment retaliation claim pertaining to the Camp Hill Defendants' alleged retaliation by placing him in general population after he arrived and was interviewed at SCI Camp Hill fails for the same reason as his aforementioned claim, i.e., there are no factual allegations in the complaint showing that the Camp Hill Defendants knew about Houser when Hinton arrived at SCI Camp Hill.  As such, the Court will also grant Defendants' motion to dismiss this specific retaliation claim against the Camp Hill Defendants.

16

Nevertheless, the Court is mindful that when construing a pro se complaint, "the relevant legal principle [must be applied] even when the complaint has failed to name it." See Mala, 704 F.3d at 244. Thus, even though Hinton characterizes his allegation about being placed in general population despite the existence of an administrative separation as a retaliation claim, the Court will also construe it as an Eighth Amendment failure-to-protect claim.

Prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'" See Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." See Farmer, 511 U.S. at 834. Therefore, for a prisoner-plaintiff to plausibly allege an Eighth Amendment failure-to-protect claim, they must allege that: (1) they were incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) the prison officials involved had a sufficiently culpable state of mind (the subjective element). See id. Specifically, the inmate must allege facts showing that the prison official knew of and disregarded an excessive risk to inmate health or safety. See Hamilton, 117 F.3d at 746.

If Hinton is asserting a failure-to-protect claim based on his admittance into general population at SCI Camp Hill, the Court will dismiss it for the failure to state a plausible claim for relief under Section 1915(e)(2)(B). Hinton alleges that his life was endangered by being placed in general population. See (Doc. No. 1 at 8). However, Hinton does not allege that he was physically injured by Sensen or anyone else during the nine (9) months he spent in general population at SCI Camp Hill.

"[I]n a failure to protect claim, it is the failure to protect from actual physical injury, not the failure to protect from the fear of injury, that violates the [Constitution]." Weir v. Smith, No. 20-cv-00127, 2021 WL 11698080, at *3 (W.D. Pa. Apr. 22, 2021) (citations omitted), report and recommendation adopted, 2021 WL 11698081 (W.D. Pa. Oct. 26, 2021); see also Brown v. Ellis, 175 F.3d 1019 (7th Cir. 1999) (table) (explaining that the "[f]ailure to protect from actual physical injury, not failure to protect from the fear of injury, is what violates the Eighth Amendment"). Because Hinton has not alleged any injury, only the fear of injury arising from the Camp Hill Defendants' purported failure to protect him, he does not plausibly allege that the Camp Hill Defendants "ignored a known 'excessive risk' when the risk is purely [his] speculation." See Weir, 2021 WL 11698080, at *3. Hinton's allegation is rendered even more speculative considering that Sensen was the victim of Hinton's criminal act in 2015, and there are no factual allegations remotely supporting Hinton's speculation that his life was at risk by being placed in general population at SCI Camp Hill even if Sensen still worked there. Therefore, the Court will dismiss any Eighth Amendment failure-to-protect claim against the Camp Hill Defendants under Section 1915(e)(2)(B)(ii).

### c.    Placement in Administrative Custody

Contrary to Defendants' argument in their reply brief, the Court finds that Hinton alleges that the Camp Hill Defendants retaliated against him by placing him in administrative custody the day after he was deposed in Houser.[9] This does not save Hinton's claim, however, as he

---

[9] Defendants' only argument in support of dismissing this claim, other than their belief that it was not included in the complaint, is their reassertion that Hinton fails to sufficiently allege causation insofar as the Camp Hill Defendants were not named as defendants in Houser. (Doc. No. 17 at 3 n.3.) As already explained, even if Defendants are correct, this is an insufficient ground upon which to dismiss the claim at this stage in the case.

once again fails to allege facts showing that the Camp Hill Defendants knew about his deposition at the time they placed him in administrative custody.  Accordingly, the Court will dismiss this claim for the failure to state a claim under Section 1915(e)(2)(B)(ii).[10]

### B.    "Class of One" Equal Protection Claims

Hinton asserts "class of one" equal protection claims against Defendants based on (1) the Rockview Defendants' recommendation to transfer him from SCI Rockview to SCI Camp Hill despite the existence of an administrative separation, (2) the Camp Hill Defendants' decision to place him in general population despite the existence of an administrative separation, and (3) the Camp Hill Defendants' decision to place him in administrative custody due to the administrative separation.  (Doc. No. 1 at 14–18.)  Hinton avers that Defendants' actions violate the DOC's policy relating to administrative separations and administrative custody, namely, DC-ADM 802. (Id. at 17.)

Defendants move to dismiss these "class of one" claims because they are duplicative of his First Amendment retaliation claims and Hinton fails to identify a comparator.  (Doc. No. 12 at 8–9.)  Defendants also argue that Hinton's allegation about the Camp Hill Defendants violating DC-ADM 802 by placing him in general population is incorrect and, even if Hinton was correct, such a violation is irrelevant to his "class of one" claims.  (Id. at 9–10 (citations

---

[10]  Part of Hinton's objection to the Camp Hill Defendants placing him in administrative custody after keeping him in general population for nine (9) months, despite the existence of the administrative separation, is that the Camp Hill Defendants appear to have done so due to the administrative separation.  See (Doc. No. 1 at 8–10).  Although it is unclear why the Camp Hill Defendants would change Hinton's incarceration status after nine (9) months, it is equally unclear why Hinton believes that his placement in administrative custody was retaliatory when he alleges that his placement in general population "endanger[ed] his life."  See (id. at 8).  In other words, Hinton allegedly believed that he was unsafe in general population due to the administrative separation with Sensen, yet objects to his placement in administrative custody for his protection.  See (Doc. No. 1-6 at 2 (stating reason for Hinton's placement in administrative custody was for his protection)).

omitted)).  Hinton responds to Defendants' arguments by contending that his "class of one"

claims are not duplicative of his First Amendment retaliation claims, and he asserts that he has

sufficiently alleged that he was treated differently from other inmates insofar as those other

inmates were "provided [with] the preventive metrics provided under general guidelines applied

in DC-ADM 802."  See (Doc. No. 16 at 7–12).  For the reasons stated below, the Court

concludes that Hinton has failed to allege plausible equal protection claims.

The Fourteenth Amendment's Equal Protection Clause requires all persons "similarly

situated" to be treated alike by state actors.  See City of Cleburne v. Cleburne Living Ctr., 473

U.S. 432, 439 (1985).  Traditionally, to maintain a Section 1983 claim under the Equal

Protection Clause, a plaintiff must demonstrate that they "receiv[ed] different treatment from that

received by other individuals similarly situated."  See Keenan v. City of Phila., 983 F.2d 459,

465 (3d Cir. 1992) (citation omitted).  However, where a plaintiff such as Hinton alleges that

they alone "ha[ve] been intentionally treated differently from others similarly situated and that

there is no rational basis for the difference in treatment," they may raise a "class of one" equal

protection claim.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  To maintain

such a claim, a plaintiff must establish that they have been irrationally singled out for disparate

treatment.  See id.  To "state a claim under [a class of one theory], a plaintiff must allege that (1)

the defendant treated [them] differently from others similarly situated, (2) the defendant did so

intentionally, and (3) there was no rational basis for the difference in treatment."  See Hill v.

Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  When alleging the existence of

similarly situated individuals, "bald assertion[s] that other[s] . . . were treated in a dissimilar

manner" will not suffice.  See Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir.

2005) (unpublished); see also Twombly, 550 U.S. at 555 ("Factual allegations must be enough to

raise a right to relief above the speculative level[.]" (citation omitted)); Connelly v. Lane Constr. Corp., 809 F.3d 780, 790 (3d Cir. 2016) (explaining that "threadbare or speculative" allegations receive no weight in the plausibility analysis (quotation omitted)); Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (explaining that "all civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (internal citations and quotations omitted)).

In the instant case, the Court agrees with Defendants that Hinton's "class of one" claims fail because he does not identify any comparator in his complaint. Contrary to his argument in his opposition brief, nowhere in his complaint does Hinton allege that there were other inmates who were "provided the preventive measures" set forth in DC-ADM 802, nor does he identify what he means by "preventive measures." See (Doc. Nos. 16 at 12; 1 at 14–17). Additionally, it is unclear from Hinton's opposition brief the characteristics of the inmates he believes are his comparators, i.e., inmates who have filed a civil action against correctional officials claiming that they have been retaliated against, inmates with administrative separations in place, inmates with administrative separations in place before entering the correctional institution upon which the administrative separation is based, inmates with administrative separations where they were the perpetrator of the act causing the entry of the administrative separation, inmates with administrative separations where they were criminally charged, convicted, and sentenced for the act(s) forming the basis of the administrative separation, etc. While the Court recognizes that "similarly situated does not mean identically situated," see Harvard v. Cesnalis, 973 F.3d 190, 205 (3rd Cir. 2020), without the identification of any comparators in his complaint, Hinton has failed to state plausible equal protection "class of one" claims against Defendants. Accordingly, the Court will grant Defendants' motion to dismiss these claims.

### C.     Request for Compensatory Damages

Defendants move for dismissal of Hinton's request for compensatory damages in the

complaint because he has not alleged any physical injury.  (Doc. No. 12 at 11 (citing 42 U.S.C. §

1997e(e))).  Hinton does not address this part of Defendants' motion in his opposition brief.

(Doc. No. 16 at 1–13.)  Nevertheless, even if Hinton addressed this argument, the Court agrees

with Defendants that he fails to allege any physical injuries in his complaint and, as such, is

precluded from seeking compensatory damages in this case.  See 42 U.S.C. § 1997e(e) ("No

Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior showing of

physical injury . . . .");  see also Mitchell, 318 F.3d at 534 (determining that Section 1997e(e)

requires a "less-than-significant-but-more-than-de minimis physical injury as a predicate to

allowing the successful pleading of an emotional injury").  Therefore, the Court will grant

Defendants' motion to dismiss Hinton's request for compensatory damages.

### D.     Leave to Amend

Having determined that Hinton's Section 1983 claims are subject to dismissal, the Court

must determine whether to grant him leave to file an amended complaint.  Courts should

generally give leave to amend but may dismiss a complaint with prejudice where leave to amend

would be inequitable or futile.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482

F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—

irrespective of whether it is requested—when dismissing a case for failure to state a claim unless

doing so would be inequitable or futile.");  see also Grayson Mayview State Hosp., 293 F.3d 103,

108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a

defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend

within a set period of time, unless amendment would be inequitable or futile.").  "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

In this case, the Court does not conclude that granting Hinton leave to amend is futile. Accordingly, the Court will grant him leave to file an amended complaint.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss Hinton's complaint insofar as Defendants move for dismissal of his (1) First Amendment retaliation claims against (a) the Rockview Defendants, (b) the Camp Hill Defendants based on their purported acceptance of his transfer into SCI Camp Hill, and (c) the Camp Hill Defendants based on placing Hinton into general population upon his arrival at SCI Camp Hill; (2) Fourteenth Amendment equal protection "class of one" claims; and (3) request for compensatory damages. The Court will also dismiss Hinton's First Amendment retaliation claim against the Camp Hill Defendants relating to his placement in administrative custody on June 10, 2022, as well as his Eighth Amendment failure-to-protect claim against the Camp Hill Defendants pertaining to his placement in general population at SCI Camp Hill.  Hinton will be granted leave to file an amended complaint.  An appropriate Order follows.[11]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[11]  The Order will provide additional information to Hinton about filing an amended complaint.